| | |
|---|---|
| ANDRE JAMAL ROBINSON, | No. 2:11-cv-2555 MCE AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MATTHEW CATE, et al., | |
| Defendants. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

## INTRODUCTION

Plaintiff is a state prisoner currently incarcerated at the Sierra Conservation Center, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's First Amended Complaint, filed March 27, 2013, against sole defendant George J. Giurbino, in his official capacity as a CDCR administrator and former Director of CDCR's Division of Adult Institutions. See ECF Nos. 36 (FAC), 44, 45.

Currently pending for decision is defendant's motion for summary judgment on the ground that recent changes to CDCR regulations render moot plaintiff's remaining claims for declaratory and prospective injunctive relief. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the

1

reasons that follow, this court recommends that defendant's motion for summary judgment be granted.

## BACKGROUND

Pursuant to a March 18, 2010 memorandum authored by defendant Giurbino, later formalized by regulation, CDCR implemented the Religious Meat Alternate Program (RMAP). The RMAP, expressly intended for Muslim inmates, provided vegetarian meals with the addition of a certified Halal[1] meat entrée at dinner. CDCR also offered, to Jewish inmates only, the Jewish Kosher Diet Program, which provided fully sealed trays with all food items certified Kosher.

Plaintiff filed his original complaint on September 21, 2011, while incarcerated at High Desert State Prison (HDSP). Plaintiff, a practicing Muslim, alleged that he had requested "a Halal and or Kosher diet since October 2, 2008." ECF No. 1-1 at 1. Plaintiff complained that his participation in the RMAP required that he obtain most of his protein from peanut butter and beans, and that the meat served at dinner was Haram (unlawful). ECF No. 1 at 3. Plaintiff sought only injunctive relief directing CDCR to provide him with "full Halal meals, i.e., entrée, vegetables, fruits, snacks etc. as Halal requires and Jewish inmates receive," and to "accommodate [him] with a Kosher diet until CDCR can provide him with a Halal diet." ECF No. 1 at 3; ECF No. 1-1 at 2.

Defendant moved to dismiss plaintiff's original complaint. In response, plaintiff filed a motion for preliminary injunctive relief seeking, inter alia, to receive all Kosher meals until CDCR provides him with all Halal meals. See ECF No. 19. The court denied plaintiff's motion on February 26, 2013, and dismissed plaintiff's original complaint with leave to file a First Amended Complaint (FAC). See ECF Nos. 31, 35.

On March 27, 2013, plaintiff filed the First Amended Complaint (FAC), which seeks damages, declaratory and prospective injunctive relief based on claims under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act

---

[1] The terms Halal, Haram and Kosher are capitalized throughout these findings and recommendations for purposes of consistency.

2

(RLUIPA), 42 U.S.C. § 2000cc-1.  See ECF No. 36.  On September 30, 2015, the court granted in part defendant's first motion for summary judgment, on the ground that qualified immunity shields defendant from liability for damages on plaintiff's Free Exercise and Equal Protection claims.  ECF No. 86 (adopting Findings and Recommendations at ECF No. 85).  Accordingly, this action proceeds only on plaintiff's claims for declaratory and prospective injunctive relief under the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and RLUIPA.  See ECF Nos. 85, 86.

On November 8, 2016, with leave of court, defendant filed the pending motion for summary judgment on the ground that recent changes to CDCR regulations permit plaintiff to participate fully in the newly structured Kosher Diet Program, which is no longer limited to Jewish inmates, and thus satisfies plaintiff's alternate request for declaratory and prospective injunctive relief.  ECF No. 99.  Defendant also contends, based on the declaration of CDCR Muslim Chaplain A. Johnson, that the RMAP provides a fully Halal diet.  Defendant contends that he is entitled to judgment as a matter of law because plaintiff's religious dietary needs are now met, rendering moot his requests for prospective injunctive relief.

Plaintiff has filed an opposition to the motion, ECF Nos. 106, 107 (errata), and defendant filed a reply, ECF No. 109.  The matter was submitted for decision on the papers.  See Local Rule 230(l).

## LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

| | |
|---|---|
| 1 | that such materials "do not establish the absence or presence of a genuine dispute, or that the |
| 2 | adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. |
| 3 | P. 56(c)(1)(A), (B). |
| 4 | When the non-moving party bears the burden of proof at trial, "the moving party need |
| 5 | only prove that there is an absence of evidence to support the nonmoving party's case." <u>Oracle</u> |
| 6 | <u>Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B). |
| 7 | Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, |
| 8 | against a party who fails to make a showing sufficient to establish the existence of an element |
| 9 | essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u> |
| 10 | <u>Celotex</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the |
| 11 | nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a |
| 12 | circumstance, summary judgment should be granted, "so long as whatever is before the district |
| 13 | court demonstrates that the standard for entry of summary judgment ... is satisfied." <u>Id.</u> at 323. |
| 14 | If the moving party meets its initial responsibility, the burden then shifts to the opposing |
| 15 | party to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita</u> |
| 16 | <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the |
| 17 | existence of this factual dispute, the opposing party may not rely upon the allegations or denials |
| 18 | of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or |
| 19 | admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. |
| 20 | Civ. P. 56(c)(1); <u>Matsushita</u>, 475 U.S. at 586 n.11. Moreover, "[a] Plaintiff's verified complaint |
| 21 | may be considered as an affidavit in opposition to summary judgment if it is based on personal |
| 22 | knowledge and sets forth specific facts admissible in evidence." <u>Lopez v. Smith</u>, 203 F.3d 1122, |
| 23 | 1132 n.14 (9th Cir. 2000) (en banc).[2] |

---

[2] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); <u>see also</u> <u>Aholelei v. Hawaii Dept. of Public Safety</u>, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly

---

letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

5

support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

## LEGAL STANDARDS FOR ASSESSING MOOTNESS

Whether a case remains justiciable is a threshold determination to be made by the court. City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). As the Ninth Circuit has explained:

> "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Cook Inlet Treaty Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir. 1999) (internal quotation marks omitted). Mootness is a jurisdictional issue, and "federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." Id. "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." Ruvalcaba v. City of L.A., 167 F.3d 514, 521 (9th Cir. 1999).

Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003).

The Supreme Court has instructed district courts to consider the following when assessing whether a case has been rendered moot:

> "'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). The underlying concern is that, when the challenged conduct ceases such that "'there is no reasonable expectation that the wrong will be repeated,'" United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953), then it becomes impossible for the court to grant "'any effectual relief whatever' to [the] prevailing party," Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). In that case, any opinion as to the legality of the challenged action would be advisory.

City of Erie, 529 U.S. at 287.

A defendant's implementation of changes that satisfy the plaintiff's request for injunctive relief may render an action for such relief moot, provided the changes will likely be permanent. "[V]oluntary cessation can yield mootness if a 'stringent' standard is met: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not

reasonably be expected to recur.' The party asserting mootness bears a 'heavy burden' in meeting this standard." Rosebrock v. Mathis, 745 F.3d 963, 971 (9th Cir. 2014) (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000) (internal citations omitted).

"A statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994). More specifically, id.:

> As a general rule, if a challenged law is repealed or expires, the case becomes moot. See Burke v. Barnes, 479 U.S. 361, 363 (1987) (bill expired during pendency of appeal, rendering moot question of whether president's pocket veto prevented bill from becoming law); United States Dep't of Treasury v. Galioto, 477 U.S. 556, 559-60 (1986) (amendment to federal statute rendered case moot); Kremens v. Bartley, 431 U.S. 119, 129 (1977) (statute providing for commitment of minors repealed, rendering case of named appellants moot); Bunker Ltd. Partnership v. United States, 820 F.2d 308, 312 (9th Cir. 1987) (new legislation which superseded prior law rendered arguments based on superseded law moot). The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted. See, e.g., City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982) (repeal of city ordinance did not render challenge to ordinance moot where city was likely to reenact statute after completion of litigation).

## FACTS

Unless otherwise noted, the following facts are expressly undisputed by the parties or the court has determined them to be undisputed based on a thorough review of the record. The initial background facts are taken from the undersigned's findings and recommendations addressing defendant's first motion for summary judgment. See ECF No. 85 at 5-9.[3] Additional facts are taken from Defendant's Statement of Undisputed Facts, ECF No. 99-3; Defendant's Request for Judicial Notice, ECF No. 99-4; Plaintiff's Statement of Undisputed Facts, ECF Nos. 106-1 and

---

[3] The initial background facts were taken from Defendant's Separate Statement of Undisputed Facts, ECF No. 72-3 at 1-4; Defendant's Separate Statement of Disputed Facts, ECF No. 79-1 at 1-4; Defendant's Response to Defendant's Statement of Undisputed Facts, ECF No. 79-2 at 1-5); and Defendant's Response To Plaintiff's Additional Material Facts, ECF No. 82-2 at 1-3. The court considered all exhibits submitted in support of each statement, including the transcript of plaintiff's June 4, 2014 deposition.

107; and Defendant's Response to Plaintiff's Statement of Facts, ECF No. 109-1.

- Plaintiff is a practicing Muslim who began requesting a Halal or Kosher diet at HDSP on October 2, 2008. Plaintiff requested a Kosher diet as an alternative, because a Halal diet was not available. Plaintiff's request was denied by because plaintiff is not Jewish, and it was anticipated that he would soon be receiving Halal meals under regulations then under consideration. See ECF No. 71 (Lodged Transcript of Pl. Depo.). Pl. Depo. at 57:17-58:6; 58:24-59:7-11; 60:14-8.

- Prior to February 2, 2010, the dietary needs of Muslim inmates were not directly addressed by CDCR regulations, CDCR's Department Operations Manual (DOM), or any other CDCR policy or procedure. The only existing inmate religious diet programs were the Jewish Kosher Diet Program, offered only to "Jewish inmates . . . as determined by a Jewish Chaplin," and the Religious Vegetarian Diet, offered to inmates with "determined religious dietary needs." See 15 Cal. Code Regs. §§ 3054, 3054.1- 3054.3 (2009); DOM, Chap. 5, Art. 51, § 54080.14 (Jan. 1, 2010).

- In January 2009, CDCR proposed regulations to accommodate the dietary needs of Muslim and other inmates. The proposal recommended that the Secretary of CDCR be authorized to prescribe regulations making the Vegetarian Diet available to any inmate for personal, ethical or religious reasons, and to create a third religious dietary option, known as the "Halal meat alternate program," "open to Muslim inmates and other inmates with a religious need to consume Halal meat, as determined by a Muslim Chaplain." See ECF No. 72-5 at 16-20.

- On February 2, 2010, the California Office of Administrative Law approved CDCR's proposed "Religious Meat Alternate Program," which was set forth in a new regulation, 15 Cal. Code Regs. § 3054.3. See ECF No. 72-5 at 21-2; 23-8; see also ECF No. 36 at 19.

- As enacted on February 2, 2010, Section 3054.3 provided in pertinent part:

    Religious Meat Alternate Program:
    (a) Religious meat alternates (meat that has been certified as Halal) shall be available at all institutions. Muslim inmates may participate in the program, as determined by a Muslim Chaplain or designee Chaplain. Non-Muslim inmates with a religious dietary need may seek participation in the program by submitting to any appropriate Chaplain a CDCR Form 3030 (Rev. 08/09), Religious Diet Request . . .
    (b) All institutions will adhere to standardized departmental Halal meat alternates, and approved procedures for procuring and serving Halal meats.

8

> (c) Each institution shall arrange for ongoing and appropriate training for all inmate workers, custody, and food service employees involved in the supervising, ordering, and serving of Halal meats.
> (d) The Religious Meat Alternate Program shall be administered in accordance with the provisions of this Article. . . .

- The Jewish Kosher Diet Program remained limited to Jewish inmates. 15 Cal. Code Regs. § 3054.2 (2010).

- The new regulations also changed CDCR's "Religious Vegetarian Diet," previously available only to "inmates with determined religious dietary needs," to a "Vegetarian Diet," available to all "[i]nmates with determined religious, personal, or ethical dietary needs." Cf. Df. RFJN, Ex. A, ECF No. 72-5 at 7, with id., Ex. D, ECF No. 72-5 at 26.

- On March 18, 2010, defendant Giurbino, in his capacity as Director of CDCR's Division of Adult Institutions, issued the subject "Giurbino Memorandum," entitled "Approval of Food Service Regulations, Policy, and Forms," directed to all Division Associate Directors, Wardens and Correctional Food Managers. Copies were sent to staff members, including the Senior Staff Counsel and Staff Counsel III of CDCR's Office of Legal Affairs. See FAC, ECF No. 36 at 21-3; see also ECF No. 36 at 21-3. The Giurbino Memorandum provided in pertinent part:

> The purpose of this memorandum is to announce the approval of amendments to the departmental regulations for food service and inmate religious diets, California Code of Regulations, Title 15, Sections 3054 through 3054.7, Religious Diet Program (Attachment A). These amended regulations became effective February 2, 2010.
>
> Effective immediately, adult institutions shall begin implementing the Religious Meat Alternate Program, the Vegetarian Diet Program, and the Jewish Kosher Diet Program as described in the amended regulations. For purposes of the Religious Meat Alternate Program, Correctional Food Managers (CFMs) shall purchase Halal meats, on delegation, from [four specified food vendors]. Only Halal meat processors who provide documentation that they are currently certified to all Halal standards will be utilized. All adult institutions shall use the Halal certified meat products and attached menus, and begin serving Religious Meat Alternate entrées as soon as possible but no later than June 28, 2010. Updated menus with approved Religious Meat Alternate entrées for the fourth quarter are attached (Attachment B).
>
> CFMs are advised the Religious Meat Alternate Program is a religious diet program with the vegetarian options being served for breakfast and lunch. The vegetarian option for breakfast and lunch meets Halal requirements. The Religious Meat Alternate (Chicken Patty, Beef Patty, or Turkey Frank) is only offered at the dinner

> meal. CFMS are reminded that Halal meat is to be stored on a separate dedicated shelf/pallet, prepared on a clean table and cooked separately from non Halal meat. Halal meat shall be placed on a sheet pan and baked. The Halal meat should be cooked prior to any other menu item to avoid cross contamination. During the serving of the meal please ensure that a dedicated utensil is used for the Halal meat item to avoid any cross contamination. Dedicated storage rooms, preparation tables, or cooking trays are not necessary for halal meat. Staff shall follow normal sanitation procedures prior to and following the preparation of halal meat. . . .

- In light of the new regulation, CDCR modified Section 54080.14 of the DOM, effective July 13, 2010, to provide, inter alia, for the new Religious Meat Alternate Program. See Df. RFJN, Ex. E, ECF No. 72-5 at 29-35; see also id., Ex. F, ECF No. 72-5 at 36-43 (setting forth requirements for making changes to the DOM).

- Plaintiff contends that under the RMAP defendant Giurbino and others were "(1) denying plaintiff [] an adequate Halal diet while allowing Jewish inmates full Kosher meals at breakfast, lunch and dinner; (2) prohibiting [plaintiff] from a Kosher diet made lawful to him in The Holy Qur'an; [and] (3) forcing him to be a vegetarian by lawfully substituting Haram (unlawful) meat with peanut butter or beans. . . ." ECF No. 1 at 3.

- Plaintiff was transferred to the California Substance Abuse Treatment Facility (CSATF) in October 2011. ECF No. 7.

- On March 27, 2013, plaintiff filed the operative FAC, which claims that CDCR has failed to accord Muslim inmates the same dietary deference accorded Jewish inmates. Plaintiff alleges that "nutrition is not the issue, being Halal (lawful) is the issue." FAC, ECF No. 36 at 4. Plaintiff explains in his FAC, id. at 4-5:

  > Every aspect of a Kosher diet is Kosher down to the condiments. . . . Inmates participating in the Kosher diet program receive Kosher meals, i.e. entrée, vegetables, rice, pasta, fruit, snacks, condiments, etc. at breakfast, lunch and dinner. Kosher meals come in a individually sealed tray and on a separate food cart to protect it from cross-contamination with Haram/unlawful foods. All Kosher foods are certified Kosher and certified Halal and procured from the appropriate vendor possessing valid certification.

- In contrast, according to plaintiff, Muslim inmates are offered a single Halal item (the entrée) as part of the dinner meal, and non-Halal vegetarian meals at breakfast and lunch. As alleged in the FAC, id. at 4-5:

  > The food served with the Halal meat of the RMA is not Halal in that it is not purchased from a certified Halal vendor as the meat

prescribed in Mr. Giurbino's memorandum, does not have Halal documentation and thus cross-contaminates the Halal meat entrée served at dinner. . . . The key word in this is "meal" not "entrée" . . . . Further, at breakfast and lunch, the RMAP is "forcing Mr. Robinson to be vegetarian which he is not."

- In May 2014, plaintiff was transferred to Sierra Conservation Center, where he remains incarcerated. ECF No. 48.

- On July 22, 2016, CDCR published a "Notice of Change to Regulations, No. 16-08."[4] ECF No. 99-4, Ex. A. This Notice announces CDCR's June 29, 2016 emergency implementation of changes to its "Religious Diet Program," Cal. Code Regs. tit. 15, §§ 3054 et seq. These changes include the newly designated "Kosher Diet Program," available to any inmate "with a religious dietary need that cannot be met by another religious diet option or by the mainline diet." Id., § 3054.2.

- Under these changes, Kosher diets are no longer limited to Jewish inmates. See DUF Nos. 7, 8; see also Pltf.'s Oppo., ECF No. 106 at 2. These changes became permanent on January 3, 2017 ("certificate of compliance"). See Cal. Code Regs. Ann. tit. 15, §§ 3054 et seq.

- Having reviewed the November 2, 2016 verified declaration of CDCR Muslim Chaplain A. Johnson,[5] see ECF No. 99-5, and "Defendant's Statement of Undisputed Facts" (DUF), see ECF No. 99-3, the court finds the following additional facts to be undisputed:[6]

---

[4] The court takes judicial notice of the "Notice of Change to Regulations, No. 16-08." The court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). The subject Notice is a matter of public record, published by a government agency. Accordingly, defendant's request for judicial notice is granted.

[5] Chaplain Johnson describes his expertise as follows, ECF No. 99-5 at 1:
> I have been a Muslim chaplain employed with the California Department of Corrections and Rehabilitation (CDCR) since May 4, 2012. I am currently the President of the Associated Chaplains in California State Service (ACCSS), the Vice President of the Muslim American Chaplains Association (MACA), and I have served as an Imam (Muslim religious leader) for over 15 years. I am currently endorsed and in good standing with the American Community Endorsement (AMCE) agency and certified to teach Islamic jurisprudence regarding the issue of Halal food items. I have person knowledge of the matters set forth in this declaration, and if called upon to testify to those matters I could do so.

[6] Although plaintiff disagrees with these facts, see Oppo., ECF No. 106 at 2, he has submitted no

11

- There is nothing in the RMAP that contains food items unlawful for a Muslim to consume. DUF No. 1 (citing Johnson Decl., ¶ 5).
- The RMAP provides a fully Halal meal[7] for Muslim inmates. DUF No. 2 (citing Johnson Decl., ¶ 5.)
- There are no guidelines within Islamic jurisprudence that declare items such as vegetables or other non-meat items as impure based on possible cross-contamination or any other speculative concerns. DUF No. 3 (citing Johnson Decl., ¶ 5.)[8]
- According to Islamic jurisprudence, all food items are considered pure and Halal unless there is a text from the Quran or the words from the Prophet Muhammad that clearly designates them Haram. DUF No. 4 (citing Johnson Decl., ¶ 6.)
- The issue of Halal and Haram food items specifically deals with meat items and the methods of slaughtering. DUF No. 5 (citing Johnson Decl., ¶ 6.)
- Only the meat entrée served at dinner under the RMAP is *certified* Halal. PUF Nos. 1 & 2 (citing Cal. Code Regs. tit. 15, § 3054.3). Nevertheless, all other food served under the RMAP is religiously considered Halal. Johnson Decl., ¶¶ 2-5.
- Not all certified Kosher food items are Halal. PUF Nos. 8-12; see also Fed. R. Evid. 201(b)(2).[9]

DISCUSSION

I. Introduction

When plaintiff commenced this action, he could obtain neither Halal nor Kosher food. When plaintiff filed the FAC, the RMAP had been implemented, providing plaintiff with a

---

evidence contradicting the assessment of Chaplain Johnson. Therefore, the court finds these facts undisputed for purposes of the present motion. See Fed. R. Civ. P. 56(c)(1), (e)(2); Local Rule 260(b).

[7] See discussion, infra, concerning Chaplain Johnson's statement that the RMAP provides an Halal "meal," as compared to "diet."

[8] Plaintiff's alleged facts to the contrary, see PUF Nos. 3, 4, lack any evidentiary foundation and thus fail to establish a material factual dispute.

[9] Defendant's objections to plaintiff's evidence on this matter are overruled in part. Although plaintiff's evidence lacks authentication and foundation, it is consistent with generally known facts and thus implicitly by other sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b)(1), (2).

12

vegetarian diet that included Halal-certified meat with each dinner; the Kosher diet remained unavailable. This court denied defendant's prior motion for summary judgment on plaintiff's claims under the Free Exercise Clause, the Equal Protection Clause and RLUIPA, on the ground that defendant had failed to submit evidence demonstrating that legitimate and/or compelling penologicial, administrative, logistical, financial or other reasons rendered CDCR unable to accommodate plaintiff's requests for a "fully Halal" or "fully Kosher" diet. See ECF Nos. 85, 86.

The undersigned's prior findings and recommendations necessarily analyzed plaintiff's legal claims on the basis of his inability at that time to obtain either a "fully Halal" diet or a "fully Kosher" diet. Both options, reflecting plaintiff's alternative requests for prospective injunctive relief, are now available to plaintiff. The newly submitted declaration of Chaplain Johnson supports the finding that the RMAP provides a "fully Halal" diet, while the recent changes in CDCR regulations now accord plaintiff the option of obtaining a "fully Kosher" diet.

The parties dispute whether these changes render the instant action moot.

II. The Parties' Arguments

Defendant contends that the availability of plaintiff's alternative requests for prospective injunctive relief renders this case moot. See ECF No. 99.

Plaintiff disagrees, contending that the RMAP remains inadequate to his religious needs and that Kosher food items are not necessarily Halal. Plaintiff asserts that the RMAP is inadequate because it includes only one certified Halal food item, the dinner meat entrée; there is no guarantee that non-certified food items are not "cross-contaminated" by Haram food; and breakfast and lunch remain vegetarian only. See ECF No. 106 at 1-2. Plaintiff contends that defendant's motion should be denied due to "the absence of Halal meals and the pairity [sic] of the meals," as compared to the Kosher diet, creating "a constant controversy whether the RMAP is Halal and whether or not all Kosher is Halal." Id. at 5.

Defendant responds that plaintiff's opposition "does not address the fact that he has consistently demanded a Kosher diet as an acceptable alternative to a 'fully Halal' meal." ECF No. 109 at 2. Defendant contends that the possibility of "cross-contamination" between Halal and Haram foods is merely speculative, as addressed by Chaplain Johnson, and the question

13

whether "all Kosher is Halal" is immaterial. Id. at 3-4. Defendant maintains that plaintiff can now obtain either a "fully Kosher" or "fully Halal" diet.

III. The Evidence: CDCR Options for a "Fully Halal" or "Fully Kosher" Diet

The declaration of Chaplain Johnson supports a finding that CDCR's RMAP provides a Halal diet that meets the religious needs of Muslim inmates. Although the only *certified* Halal food item is the dinner meat entrée, Chaplain Johnson explains that "[t]here is nothing in the RMAP, as it is currently presented to inmates, that contains food items that are unlawful for a Muslim to consume." Johnson Decl., ¶ 5. The Chaplain opines that plaintiff's speculation of "cross-contamination" by Haram foods or other impurities has "no basis in Islamic jurisprudence" and is "not supported by any guidelines in Islam." Id., ¶ 2; see also id., ¶ 6 ("all food items are considered pure and Halal" unless specifically designated Haram or "there is proof that these items contain impure items"). Chaplain Johnson concludes in part that the "RMAP therefore provides a fully Halal meal for Muslim inmates." Id., ¶ 5.

It is not clear whether the Chaplain's reference to "meal" is intentionally limited to the RMAP dinner; however, viewed in the context of the Chaplain's entire declaration, the phrase does not appear to be so limited. Moreover, this court previously found that the RMAP's service of meat only once daily is rationally related to CDCR's legitimate interests in minimizing costs and operating a simplified food service program that meets the needs of both Muslim and vegetarian inmates. See ECF No. 85 at 32. Accordingly, the court finds that Chaplain Johnson's declaration supports the finding that the RMAP diet is "fully Halal," and therefore satisfies plaintiff's primary request for injunctive relief. Plaintiff's unsupported arguments to the contrary, in opposition to the pending motion, are refuted by the declaration of Chaplain Johnson. Plaintiff has not presented any evidence that creates a genuine factual dispute regarding the religious adequacy of the RMAP diet for Muslim inmates.

Moreover, although the Kosher diet is not entirely Halal, plaintiff has consistently sought access to the Kosher diet as an alternative form of relief. See PUF No. 6; see also DUF No. 6 (citing ECF No. 1 at 3 (plaintiff's original complaint challenged his preclusion "from a Kosher diet made lawful to him in The Holy Qur'an"); ECF No. 1-1 at 2 (plaintiff's original complaint

14

sought "a Kosher diet until CDCR can provide him with an Halal diet"); ECF No. 36 at 3 (the FAC alleges that "[i]t would cost no more to provide Mr. Robinson with a Kosher diet than it would any other participant"); ECF No. 79 at 7 (in his opposition to defendant's first motion for summary judgment, plaintiff contended that CDCR's Kosher diet "meets Halal requirement[s]"); ECF No. 93 at 1-2, 8-9 (in a motion for preliminary injunctive relief, plaintiff sought "Kosher meals in lieu of Halal meals" until the conclusion of this case, noting that "while the Kosher meals . . . may not be entirely Halal, it is the most viable option offered")); see also FAC, ECF No. 36 at 1-2 (plaintiff requested a Kosher diet in 2008 while incarcerated at HDSP and pursued a petition for writ of habeas corpus in state court on that basis; after his transfer to CSATF, plaintiff twice requested a Kosher diet); id. at 4 (plaintiff alleges that he "has the same dietary precepts of Judaism [but] is not allow[ed] to participate in the Kosher diet program."); id. at 5 (plaintiff alleges that he "is similarly situated as an Jewish inmate, their dietary needs are similar and the difference between the two faiths are a matter of doctrine not dietary.").

These statements by plaintiff demonstrate that, although the Kosher diet may not be entirely Halal, plaintiff has consistently requested the Kosher diet as an alternative form of relief. It is undisputed that the newest regulations provide plaintiff access to the Kosher diet.

####        IV.    Analysis:  Availability of Requested Injunctive Relief Renders this Case Moot

The court denied defendant's prior motion for summary judgment on plaintiff's remaining claims because defendant failed to submit evidence adequate to support CDCR's refusal to accommodate either of plaintiff's requests for prospective injunctive relief. The court denied defendant's motion on the merits of plaintiff's free exercise claim[10] due to CDCR's failure to demonstrate that its challenged policies were reasonably related to legitimate penological interests, and thus the court's inability to determine "whether CDCR is precluded by the practical

---

[10] To prevail on a Free Exercise claim, a prisoner must demonstrate that prison officials substantially burdened the free exercise of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). A prison policy that substantially burdens a prisoner's right to freely exercise his religion will be upheld only if it is reasonably related to a legitimate penological interest. Thomas v. Review Board, 450 U.S. 707, 718 (1981).

15

considerations" reflected in the third and fourth Turner factors[11] "from according plaintiff a Kosher or fully Halal diet." ECF No. 85 at 38, ECF No. 86. Similarly, the court denied defendant's motion on the merits of plaintiff's equal protection claim[12] because, in "the absence of sufficient evidence to support a conclusion under Turner in the free exercise context, the court is also unable to determine whether limiting plaintiff to the RMAP-Vegetarian Diet [i.e., denying plaintiff a Kosher diet] is reasonably related to legitimate penological interests under plaintiff's equal protection claim." ECF No. 85 at 40, ECF No. 86. Finally, the court denied defendant's motion on the merits of plaintiff's more restrictive RLUIPA claim,[13] due to CDCR's failure to demonstrate that the RMAP was the least restrictive means for furthering a compelling governmental interest. ECF No. 85 at 48, ECF No. 86.

Now that plaintiff may request either the RMAP or the Kosher diet, the court's further consideration of these questions would provide no more than an "impermissible advisory opinion." Church of Scientology, 506 U.S. at 12 n.6. The controversies that drove plaintiff's personal interest in commencing and pursuing this litigation no longer exist. See Sierra Club v.

---

[11] The following four factors, identified by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987), must be balanced in determining whether a prison regulation is reasonably related to a legitimate penological interest: "(1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) Whether there are alternative means of exercising the right that remain open to prison inmates; (3) Whether accommodation of the asserted constitutional right will impact guards and other inmates, and on the allocation of prison resources generally; and (4) Whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives." Shakur, 514 F.3d at 884 (citing Turner, 482 U.S. at 89-90) (internal quotation marks and citation omitted).

[12] Prisoners are protected by the Equal Protection Clause from intentional discrimination based upon their religion. Shakur, 514 F.3d at 891. However, prisons are not required to provide identical resources to different religions; they need only make a "good faith accommodation of the [prisoner's] rights in light of practical considerations." Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987) (citation omitted). The appropriate analysis for assessing the merits of a prisoner's Equal Protection claim turns not on defendant's intent but on whether the resulting disparate policy is reasonably related to legitimate penological interests, as determined pursuant to a Turner analysis. DeHart v. Horn, 227 F.3d 47, 61 (3rd Dist. 2000) (cited with approval by the Ninth Circuit in Shakur, 514 F.3d at 891).

[13] Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability," unless the government establishes that imposition of the burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b).

16

United States Forest Service, 93 F.3d 610, 614 (9th Cir.1996) ("'An action is moot if the court cannot grant any effective relief.'") (quoting Wilson v. United States Dept. of Interior, 799 F. 2d 591, 592 (9th Cir. 1986)).

Further, CDCR's regulatory changes, though voluntary, are likely to be permanent. CDCR has acknowledged that the changes are intended to "implement In re Garcia, 202 Cal. App. 4th 892 (2012), where the California Court of Appeal held that prisons must afford a Kosher diet accommodation to inmates based on religious need." Notice of Approval of Certificate of Compliance, OAL Matter Number 2016-1117-03, "Final Statement of Reasons," at p. 4. As the undersigned has previously noted, the religious dietary rights of prisoners have been expanding. See ECF No. 85 at 43-5, discussion and citations therein (qualified immunity); see also Shakur, 514 F.3d at 886-91 (the request of a Muslim inmate for Halal and/or Kosher food is subject to legal analysis under the Turner factors). "Where new legislation represents a complete substitution for the law as it existed at the time of a district court's decision, arguments based upon the superseded part are moot." Bunker Ltd. Partnership, 820 F.2d at 312. This is not a case in which defendant is free "at any time" to resume the challenged conduct, or where the alleged wrong remains "capable of repetition yet evading review." Native Village of Noatak, 38 F.3d at1509. Rather, these regulatory changes cannot be repealed or amended without department-wide reconsideration in light of recent legal challenges favoring expanded dietary options for prisoners, as well as a period for institutional and public comment. Cf., W.T. Grant, 345 U.S. at 633 (there must exist "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive").

For these reasons, the court finds that the instant action has been rendered moot by CDCR's recent implementation of regulations according plaintiff the option of obtaining his alternative request for prospective injunctive relief (a fully Kosher diet), or his original request for injunctive relief (a fully Halal diet). Accord, Shabazz v. Giurbino, 2017 WL 2671082, at *12, *14 2017 U.S. Dist. LEXIS 95949, at *33, *41 (E.D. Cal. June 21, 2017) (Case No. 1:11-cv-01558 DAD SAB PC) (findings and recommendations pending for consideration before the district judge) ("Because Plaintiff has received one of the satisfactory forms of injunctive relief

that he requested [the RMAP Halal diet], his requests for injunctive relief are moot [under Section 1983]. . . . Plaintiff's RLUIPA claim is moot [because he can, alternatively, request a Kosher diet].").

Accordingly, the undersigned recommends that defendant's motion for summary judgment be granted.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment, ECF No. 99, be granted, on the ground that this action has been rendered moot.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 8, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE